## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

TRACY MCPHERSON, on behalf of
himself and all others similarly situated,

Civil Action No. 5:20-cv-01307-G

Plaintiff,

v.

AMERICAN BANK SYSTEMS, INC.

Defendant.

LARRY LYLES, on behalf of
himself and all others similarly situated,

Civil Action No. 5:21-cv-00023-HE

Plaintiff,

v.

AMERICAN BANK SYSTEMS, INC.

Defendant.

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT
## AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

    A. Factual and Procedural Overview of the Litigation ..................................... 2

    B. Negotiation of the Proposed Settlement ......................................................... 4

    C. Terms of the Proposed Settlement .................................................................. 6

        1.    The Settlement Class Definition ............................................. 6

        2.    Consideration ........................................................................ 6

        3.    The Proposed Notice and Claims Program ............................ 9

ARGUMENT .......................................................................................................................... 11

    I.    The Court Should Preliminarily Approve the Agreement and
        Authorize Notice to the Proposed Settlement Class ........................................ 11

        A. The Proposed Class Is Adequately Represented ......................................... 13

        B. The Proposed Settlement Was Negotiated at Arm's Length ...................... 15

        C. The Settlement Relief Is Fair, Reasonable, and Adequate ........................ 15

        D. The Method of Distributing Relief Will Be Equitable and Effective ........ 17

        E. The Proposed Attorneys' Fees Are Reasonable .......................................... 18

        F. All Additional Factors Support Preliminary Approval .............................. 19

    II.    The Court Should Find It Is Likely to Certify the Settlement Class ................. 20

        A. The Rule 23(a) Requirements Are Satisfied ............................................... 20

        B. The Requirements of Rule 23(b)(3) Are Satisfied ..................................... 23

    III.    The Court Should Approve the Proposed Notice Plan and Administrator ......... 25

CONCLUSION ....................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) .........................................................................................20, 23, 25

*Brown v. Electrolux Home Products, Inc.*,
    817 F.3d 1225 (11th Cir. 2016) ...................................................................... 24

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ........................................................................ 18

*CGC Holding Co., LLC v. Broad and Cassel*,
    773 F.3d 1076 (10th Cir. 2014) ..................................................................23, 25

*DeJulius v. New England Health Care Employees Pension Fund*,
    429 F.3d 935 (10th Cir. 2005).......................................................................... 25

*DG ex rel. Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010)........................................................................ 22

*Grunin v. Int'l House of Pancakes*,
    513 F.2d 114 (8th Cir. 1975)............................................................................ 26

*Harris v. Chevron U.S.A., Inc.*,
    Case No. 15-cv-0094, 2019 WL 5846917 (W.D. Okla. July 29, 2019)............ 11, 12, 20

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .............................................................16, 19, 20, 24

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014)........................................................................ 15

*In re Equifax Inc. Customer Data Security Breach Litig.*,
    1:17-md-2800, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020)..................... 16, 17, 19, 20

*In re Molycorp, Inc. Sec. Litig.*,
    Case No. 12-cv-292, 2017 WL 4333997 (D. Colo. Feb. 15, 2017) .............................. 15

*In re Motor Fuel Temperature Sales Practices Litig.*,
    286 F.R.D. 488 (D. Kan. 2012)........................................................................ 12

*In re Motor Fuel Temperature Sales Practices Litig.*,
    872 F.3d 1094 (10th Cir. 2017)....................................................................13, 19

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  997 F.3d 1077 (10th Cir. 2021) ................................................................. 18

*In re Sonic Corp. Customer Data Breach Security Litigation*,
  1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ................. 16, 17, 19, 20

*In re Thornburg Mortg., Inc. Secs. Litig.*,
  912 F. Supp. 2d 1178 (D. N.M. 2012) ........................................................ 21

*Naylor Farms, Inc. v. Chaparral Energy, LLC*,
  923 F.3d 779 (10th Cir. 2019) ................................................................. 21, 23

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................. 25

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ............................................................... 13, 22

*Trevizo v. Adams*,
  455 F.3d 1155 (10th Cir. 2006) ............................................................... 21

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S.Ct. 1036 (2016) ............................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................ 21

## **Rules**

Fed.  R.  Civ.  P. 23 ................................................................................ *passim*

## **Other Authorities**

Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in
  Class Actions: 2009–2013*, 92 N.Y.U. LAW REV. 937 (2017) ................... 18

William Rubenstein, *Newberg on Class Actions* (5th ed. 2015) ................. 12, 23

Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure*
  (3rd ed. April 2021 Update) ................................................................... 26

Manual for Complex Litigation (4th ed.  2014) ........................................ 20

## INTRODUCTION

Plaintiffs Tracy McPherson and Larry Lyles respectfully move, under Rule 23(e) of the Federal Rules of Civil Procedure, for preliminary approval of a proposed class action settlement between themselves and Defendant American Bank Systems, Inc. ("ABS"). With the assistance of an experienced neutral mediator, the parties negotiated the proposed Class Action Settlement Agreement ("Agreement") which, if approved, will resolve the claims alleged in these actions and provide substantial, direct monetary relief available to all settlement class members who were harmed by the 2020 data security incident involving ABS's systems.

Specifically, if the Agreement is approved, ABS will pay $1.7 million into a settlement fund which will be used to: (1) pay valid claims submitted by Class Members for all validly submitted Inconvenience Claims and/or Documented Loss Claims (explained in more detail below); (2) pay all reasonable settlement administration and notice costs; and (3) pay reasonable, Court-approved attorneys' fees, costs, expenses, and named plaintiff service awards. Settlement Class Members will be eligible to receive up to $5,000 for a Documented Damages claim for any out-of-pocket losses they incurred as a result of the Data Security Incident, or payment for an Inconvenience Claim—which will be a fixed amount of the Settlement Fund—simply by completing a claim form.  Plaintiffs believe that these two payment methods will allow those Class Members who have incurred out-of-pocket costs to obtain a material recovery, and also allow those Class Members who have not incurred any out-of-pocket-costs to receive compensation for the harm caused by the exposure of their PII through from the ABS Data Security Incident.

Plaintiffs move for an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the proposed settlement class; (3) approving the proposed notice program including Analytics Consulting LLC as the Settlement Administrator; and (4) scheduling a final approval hearing. Plaintiffs respectfully request that this Motion, which ABS does not oppose, be granted as the settlement meets all of the standards for preliminary approval. The settlement class satisfies the requirements of Rule 23. And the notice program – which consists of individualized mail or email notice, a toll-free number and a website maintained by Analytics – comports with both Rule 23 and due process.

In support of their motion, Plaintiffs submit a proposed preliminary approval order; the Joint Declaration of Class Counsel Gary F. Lynch and Joseph P. Guglielmo ("Jt. Decl."); the proposed settlement agreement ("SA") and its various attachments, such as the proposed notices and claim form (attached as Exhibits A–C); and a Declaration of Richard W. Simmons, from the proposed Settlement Administrator, Analytics Consulting LLC.

## FACTUAL BACKGROUND

### A.    Factual and Procedural Overview of the Litigation

Defendant ABS is an Oklahoma corporation that creates software products for use in the financial services industry. *McPherson*, Am. Compl., ¶¶ 1, 13. For example, ABS offers software suites known as BankManager, CreditUnionPro, CompliancePro, and CoPilot Loans and Deposits, among others. *Id.* ¶ 21. ABS has more than 350 institutional clients, primarily banks and credit unions, located in 35 states. *Id.* ¶ 14. When a financial institution uses ABS's products, customer information is stored in these programs, and

ABS stores credentialing information for its clients that allows access to the underlying data. *Id.* ¶¶ 23–24.

In November 2020, a hacker group known as Avaddon publicly announced in a "leak warning" they had infiltrated ABS's systems and had requested a "ransom" from ABS to prevent public disclosure of the acquired data. *Id.* ¶¶ 35–37. Avaddon claimed that ABS "do not want to pay and thinks we are bluffing." *Id.* To support their claims, Avaddon leaked approximately 4 gigabytes of sensitive stolen files, which had apparently been taken in or before October 2020. *Id.* Avaddon claimed that they had a total of 52.57 gigabytes of data taken from ABS's systems. *Id.*

Journalists reviewed the leaked files and noted that they contained financial documents with highly sensitive personally identifying information (PII), customer names, social security numbers, loan amounts, interest rates, and pertinent loan dates such as origination dates, maturity dates, and pay off dates. *Id.* ¶ 39. The data was stored in unencrypted plaintext files, meaning that they were fully readable by anyone who examined them. *Id.*

ABS apparently learned of the Data Security Incident while it was occurring on October 22, 2020. *Id.* ¶ 34. ABS did not pay the demanded ransom and did not prevent the further dissemination of Plaintiffs' and the Class' PII, and by November 14, 2020, the full cache of stolen data was leaked by Avaddon. *Id.* ¶ 43.

Plaintiffs filed these actions after learning that their PII, which had been provided to their financial institutions, had been compromised in the Data Security Incident. The *McPherson* action was filed on December 30, 2020. The *Lyles* action was filed on

3

January 11, 2021.  A third action arising from the same Data Security Incident was filed in the Western District of Pennsylvania on December 26, 2020: *Lautman v. American Bank Systems, Inc.*, No. 2:20-cv-01959-RJC (W.D. Pa.).

Plaintiffs brought claims for violations of the Oklahoma Consumer Protection Act, Oklahoma Deceptive Trade Practices Act, negligence, negligence per se, unjust enrichment, and declaratory judgment. The actions are still in early procedural phases. On March 11, 2021, this Court consolidated the *Lyles* and *McPherson* cases for pretrial purposes, and appointed Attorneys Gary F. Lynch and Joseph P. Guglielmo as interim co-lead counsel, and Attorney William B. Federman as interim liaison counsel. The parties have conducted initial Rule 26 meetings and initial case management conferences in the actions and case management orders have been entered by the Court. ABS moved to dismiss the *McPherson* action, but that motion has been mooted by an amended complaint filed on February 18, 2021.

### B.    Negotiation of the Proposed Settlement

This Settlement resulted from good faith, arm's-length settlement negotiations supervised by Hon. Morton Denlow (Ret.)—a retired United States Magistrate Judge and highly experienced mediator—beginning with a Zoom-facilitated mediation session on April 5, 2021. (Jt. Decl., ¶ 8).  At the conclusion of the mediation, the parties reached a tentative settlement, and over the following weeks, with Judge Denlow's continued involvement, the parties negotiated a term sheet that was executed on May 17, 2021. (Jt. Decl., ¶ 8).  The parties then proceeded to draft a comprehensive Settlement Agreement

("SA"),[1] and pertinent settlement attachments, including proposed notices, a proposed claim form, distribution plan, and proposed orders. The parties also sought cost proposals from potential settlement administrators.

Before and during the parties' settlement negotiations, Plaintiffs sought and obtained informal discovery from ABS on a number of topics, including: the number of individuals whose PII was compromised during the Data Security Incident; the types of PII exposed; the mechanics of the Data Security Incident including identification of the affected systems; the communications ABS received from the hackers; the remedial actions ABS took after the Data Security Incident and their cost; ABS's financial condition; and the terms of any potentially applicable insurance coverage. (Jt. Decl., ¶ 4).

This information allowed Plaintiffs' counsel to conduct the settlement negotiations with a full understanding of the strengths and weaknesses of Plaintiffs' claims, the size and scope of the potential class, and the financial resources available to facilitate a settlement. (Jt. Decl., ¶¶ 4, 12). Equipped that knowledge, and their significant experience litigating and resolving similar actions, Plaintiffs' counsel negotiated what they believe to be a fair, adequate, and reasonable settlement worthy of presentation to the Court and the putative class. (Jt. Decl., ¶¶ 9, 12).

---

[1] The proposed agreement and its exhibits are attached as Exhibit 1.

### C.    Terms of the Proposed Settlement

#### 1.    The Settlement Class Definition

For settlement purposes only, Plaintiffs propose certification of the following class

pursuant to Fed. R. Civ. P. 23(b)(3),[2] defined as:

> **All individuals in the United States, and its territories, whose PII was compromised in the Data Security Incident involving American Bank Systems which occurred between October and November 2020 ("ABS Data Security Incident").[3]**

(SA, ¶ 3.1). As set forth below, the Settlement Class meets all the requirements under

Rule 23(a) and 23(b)(3) and should be provisionally approved.

#### 2.    Consideration

##### a.    Direct Monetary Relief to Settlement Class Members

Under the Settlement, ABS will pay $1.7 million into a common fund. (SA, ¶ 4.3).

The common fund will be used to: 1) pay court-approved attorneys' fees, expenses, and

plaintiff service awards; 2) pay costs of administration and notice; and 3) make payments

to Settlement Class Members who submit approved Documented Loss or Inconvenience

Claims, as defined in the Settlement Agreement. (SA, ¶ 4.3). Eligible Settlement Class

Members may make both Documented Loss Claims and Inconvenience Claims so long as

such claims are not encompassed by one another. (*Id.*).

---

[2]    ABS does not oppose certification for settlement purposes only.

[3]    Excluded from the Settlement Class are the Court, and any immediate family members of the Court; directors, officers, and employees of ABS; parents, subsidiaries, and any entity in which ABS has a controlling interest; and individuals who timely and validly request exclusion from the Settlement Class.

For Documented Loss Claims, Settlement Class Members are eligible to receive up to $5,000 if they: a) attest that they suffered an out-of-pocket loss as a result of identity theft or fraudulent activity experienced after October 1, 2020, and b) provide additional documentation to verify their damages.  (SA, ¶¶ 4.5(b)(ii)(1)). The claims may be subject to proration, if necessary. Settlement Class Members may submit an Inconvenience Claim by returning a claim form, but no additional documentation is required. (SA, ¶¶ 4.5(b)(ii)(2)). Inconvenience Claims will be paid as equal shares of all funds remaining in the settlement fund after deduction of attorneys' fees/expenses, service awards, administration/notice costs, and payment of valid Documented Loss Claims. (*Id.*).

> **b.    Administration Costs, Service Awards, Attorneys' Fees, and Expenses of Litigation**

The common fund will also be used to pay the reasonable costs of notice, settlement administration, service awards to the class representatives, attorneys' fees, and reimbursement of litigation expenses/costs.  (SA, ¶ 4.5(a)). After a competitive bidding process, the parties have retained Analytics Consulting, LLC to perform settlement administration and notice services. (Jt. Decl. ¶ 10). Analytics estimates that costs of notice and administration will be between $212,696 and $273,588, depending on the claims rate and number of valid email addresses identified for class members. (Jt. Decl. ¶ 10).

Plaintiffs and Class Counsel will apply to the Court for awards to the class representatives for their service to the Settlement Class.  Subject to the Court's approval, the fund will be used to pay up to $1,500 to each of the three Plaintiffs (including Mitchell

Lautman, the plaintiff in the *Lautman* action), via Class Counsel, as a service award.  (SA, ¶¶ 4.5(a)(i), 10.1).

Class Counsel will apply to the Court for an award of attorneys' fees and reimbursement of litigation costs and expenses.  Subject to the Court's approval, Class Counsel will seek up to, but no more than, 30% of the common fund as attorneys' fees, plus reimbursement of their reasonable costs and expenses, to be paid within 30 days of the Effective Date of the Settlement.  (SA, ¶¶ 4.5(a)(ii), 10.1).

### c.    Injunctive Relief

In addition to monetary consideration, ABS has committed to eliminating the storage of any unencrypted PII on its systems. (SA ¶ 4.10).  ABS also represents as part of the settlement agreement that it has completed significant remediation of its data security practices. (*Id.*).

### d.    Releases

In exchange for the consideration provided by ABS under the Agreement, the Settlement Class Representatives, Settlement Class Members who do not timely and validly exclude themselves, and their related persons will release ABS and its related entities from any claims that were or could have been asserted in the Complaint, including, but not limited to, claims arising out of the Data Security Incident and the disclosure of Settlement Class Members' PII, ABS's maintenance of Settlement Class Members' PII and information security practices, and ABS's response to and notices regarding the Data Security Incident.  (SA, ¶¶ 9.1, 9.2).

### 3.    The Proposed Notice and Claims Program

Subject to the Court's approval, the Parties propose to individually notify each Settlement Class Member through either email or U.S. Mail, and to have the Settlement Administrator establish a toll-free number and Settlement Website to provide information about the Settlement. (SA ¶ 7.2; Simmons Decl. ¶ 12). Settlement Class Members will be able to file claims both electronically and by mail. (Claims Administration and Distribution Plan, SA Ex. D § II).

### a.    Direct Notice

For purposes of effectuating Direct Email and Mail Notice, ABS will submit to the Settlement Administrator the name, mailing address, and email address (if available), of each known class member. (SA, ¶¶ 3.3, 6.3, 7.2(a)). The Settlement Administrator will use this data, along with other reasonably available sources, to send an email notice to class members for whom an email address is identified. (SA, ¶ 7.2(a)–(b); SA Ex. B (proposed long and short form notices); Simmons Decl. ¶ 22 (explaining that email notice will include links to notice and claim form, rather than attachments, to avoid spam filters). The Settlement Administrator will send a mail notice to class members for whom an email address is not identified. (SA ¶ 7.2(c); SA Ex. C (proposed mail notice)). Rule 23(c)(2)(B) clearly identifies that notice via email and mail are appropriate methods to effectuate direct notice that is the best notice that is practicable under the circumstances.

For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. (SA, ¶ 7.2(c)). For any Mail Notices that are returned undeliverable

without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses (such as running the mailing address through the National Change of Address Database) and re-mail the Mail Notice to the extent updated addresses are identified.  (*Id.*).  The Settlement Administrator need only make one attempt to re-mail any Mail Notices that are returned as undeliverable.  (*Id.*).

The notices include a description of the material terms of the Settlement; a date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members can submit a Claim Form and access the Settlement Agreement and other related documents and information. (SA Exs. B–C). Notice will also be posted on the Settlement Website. (Simmons Decl. ¶ 31(iii)). The Claim Form will be posted on the Settlement Website where it can be downloaded, printed, and mailed, or settlement class members can simply submit their claims electronically on the Settlement Website. (Claims Administration and Distribution Plan, SA Ex.  D § II; SA Ex. A (proposed Claim Form)).  The Claim Form is only three pages long and requires Settlement Class Members to provide very basic information: their name, address, phone number, email address, an indication of whether they also want to submit a Documented Loss Claim, and instructions regarding the types of documentation required for such a claim.

The Parties propose a 180-day claim period following the Notice Deadline (defined as the date by which the Administrator is required to send Mail Notice, which shall be 45 days after entry of the Preliminary Approval Order unless the Court sets a different deadline).  (SA, ¶¶ 2.3, 2.19).

### b. Settlement Website

The Settlement Administrator also will establish the Settlement Website, which will contain all the information included in the other forms of notice and will provide links to pertinent case documents.  (SA, ¶¶ 2.20, 2.32, 7.2(d)).  The Settlement Website will permit Settlement Class Members to file claims electronically.  (SA, ¶ 7.2(d)).

### c. Opt-Out and Objection Procedures and Deadlines

All forms of notice: (1) explain the procedure by which a Settlement Class Member can exclude himself or herself from the Settlement prior to the Opt-Out Deadline (SA, ¶ 7.3); and (2) explain the procedure for a Settlement Class Member to object to the Settlement or Class Counsel's applications for awards of attorneys' fees, costs and expenses, or Service Awards to Settlement Class Representatives prior to the Objection Deadline.  (SA, ¶ 7.5).  The proposed Opt-Out and Objection Deadlines are 114 days after the date of the Preliminary Approval Order.  (SA, ¶¶ 2.21, 2.22).

## ARGUMENT

### I. The Court Should Preliminarily Approve the Agreement and Authorize Notice to the Proposed Settlement Class

Court approval is required for any class action settlement that releases the claims of absent class members.  Fed. R. Civ. P. 23(e).  Approval is a two-step process.  "In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement." *Harris v. Chevron U.S.A., Inc.*, Case No. 15-cv-0094, 2019 WL 5846917, at *2 (W.D.

Okla. July 29, 2019). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *Newberg on Class Actions* §13:10 (5th ed. 2015). Second, after preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected. *See id.* At the final fairness hearing, the Court also addresses any objections to treatment of the litigation as a class action or objections to the terms of the settlement. *See Harris*, 2019 WL 5846917, at *2.

Preliminary approval of a proposed settlement is appropriate "where it appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *Harris*, 2019 WL 5846917, at *2 (citing *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012)).

Before the Court can direct notice to the class, a plaintiff must "show[] that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)[.]" Fed. R. Civ. P. 23(e)(1)(B). Approval under Rule 23(e)(2) requires that the settlement be fair, reasonable, and adequate, taking into consideration the following factors: (1) whether "the class representatives and class counsel have adequately represented the class"; (2) whether the settlement "was negotiated at arm's length"; (3) whether "the relief provided for the class

is adequate"; and (4) whether the settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(A)–(D).[4]

The Tenth Circuit has also identified four factors (partially overlapping with the Rule 23(e)(2) factors) to be considered in assessing whether a settlement is fair, reasonable, and adequate:

1) whether the proposed settlement was fairly and honestly negotiated;
2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
4) the judgment of the parties that the settlement is fair and reasonable.

*In re Motor Fuel Temperature Sales Practices Litig.*, 872 F.3d 1094, 1116–17 (10th Cir. 2017) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1186–87 (10th Cir. 2002)).

As explained below, the proposed settlement satisfies all requirements for preliminary approval.

### A.    The Proposed Class Is Adequately Represented

This Court previously has considered Class Counsel's qualifications when appointing Gary F. Lynch and Joseph P. Guglielmo as interim co-lead counsel and appointing William B. Federman as interim liaison counsel (*See Lyles*, Doc. 34 at 3).  Class

---

[4]    Rule 23(e)(3) also requires the identification of any additional agreements related to the settlement. Class Counsel represents that there are no agreements related to the settlement other than those reflected in the Settlement Agreement itself and an agreement with Analytics LLC to perform notice and settlement administration services if this motion is granted by the Court. (Jt. Decl. ¶ 17).

Counsel have extensive experience litigating complex and class actions and have demonstrated particular success in litigating data security breach class actions. (Jt. Decl., ¶ 11).[5]

Class Counsel have adequately represented the class by fully investigating the facts and legal claims; preparing the complaints; requesting, obtaining, and reviewing numerous documents from ABS regarding the incident, affected class members, its remediation efforts, insurance coverage, and financial condition; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in the mediation and a multi-week negotiation process. This activity has provided Class Counsel with adequate information to negotiate this Settlement. (Jt. Decl., ¶¶ 4, 12).

The Settlement Class Representatives have demonstrated their adequacy in selecting well-qualified Class Counsel, producing information and documents to Class Counsel to permit investigation and development of the complaints, and monitoring the Litigation. (Jt. Decl., ¶ 13). Their claims align with those of the Settlement Class. Thus, this factor under Rule 23(e)(2)(A) weighs in favor of granting preliminary approval.

---

[5]  This settlement represents at least the fifth data breach class settlement in recent years achieved by Carlson Lynch and Scott+Scott working together as co-lead counsel. The prior four cases include: *In re Home Depot Customer Data Sec. Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.); *Veridian Credit Union v. Eddie Bauer LLC*, 2:17-cv-356 (W.D. Wash.); *First Choice Federal Credit Union v. The Wendy's Company*, 2:16-cv-506 (W.D. Pa.); and *In re Equifax, Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800 (N.D. Ga.). All four settlements were granted final approval with no objections.

### B.    The Proposed Settlement Was Negotiated at Arm's Length

"Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, Case No. 12-cv-292, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017) (citing *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 689 (D. Colo. 2014)).

The proposed settlement was negotiated at arm's length, without collusion and with the assistance of a highly qualified mediator, retired United States Magistrate Judge Morton Denlow.  As part of the mediation process, the Parties exchanged and provided to the mediator memoranda outlining the strengths and weaknesses of their claims and defenses, and responses to questions posed by the mediator in his "class action checklist."[6]  That the Settlement was achieved through well-informed and arm's-length, neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B).

### C.    The Settlement Relief Is Fair, Reasonable, and Adequate

The settlement provides a strong recovery for the Class in light of the risks posed by continued litigation.  The settlement would create a common fund of $1.7 million, for direct distribution to claimants, once attorneys' fees, notice and administration costs are awarded.  (Jt. Decl. ¶ 14). With a class size of approximately 554,000, a net settlement fund of approximately $900,000 would result in an average payout of between $16 and $33,

---

[6] Available at: https://www.jamsadr.com/pdf-viewer.aspx?pdf=/files/uploads/documents/articles/denlow-class-action-checklist-2016-06.pdf

assuming that the overall claims rate is between 5% and 10%.  The actual average amount will vary depending several factors, including the claims rate, the value of Documented Loss and Inconvenience Claims submitted, and the actual amounts approved for attorneys' fees, expenses, costs of notice and administration. (Jt. Decl. ¶ 14) ABS has also committed to eliminating the storage of any unencrypted PII on its systems.  These benefits compare favorably with settlements approved in similar data breach cases.

For example, in *In re Sonic Corp. Customer Data Security Breach Litigation*, 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019), the court approved a settlement of $4,325,000 for a class of 1.5 million consumers whose payment card data was exposed. *Sonic*, 2019 WL 3773737 at *1–3. The settlement class size here is approximately 36.9% of the size of the *Sonic* class, and the settlement fund here is approximately 39.3% of the size of the *Sonic* settlement fund, indicating that the two settlements are closely proportional.

Here, the $1.7 million settlement fund provides a per capita recovery of approximately $3.07 for each of the roughly 554,000 class members. This is in line with or better than the per-capita cash recoveries in other, approved data breach settlements, including some of the largest settlements on record. For example, the settlement in *In re Anthem, Inc. Data Breach Litig.*, created a $115 million settlement fund for a class size of approximately 79.15 million individuals, equal to roughly $1.45 per class member. *Anthem*, 327 F.R.D. 299, 318–19 (N.D. Cal. 2018). In the consumer settlement in *In re Equifax Inc. Customer Data Security Breach Litig.*, the settlement provided cash benefits ranging between $380.5 million to $505.5 million (depending on the claims made) for a

16

class of 147 million, equal to roughly $2.59 to $3.44 per class member. *See Equifax*, 1:17-md-2800, 2020 WL 256132, at *2 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 2021 WL 2250845 (11th Cir. June 3, 2021). In the *Sonic* settlement, the amount per class member was $2.88. *See Sonic*, 2019 WL 3773737 at *1–3.

Based on these comparisons to similar settlements, and the additional factors discussed below, the proposal here is fair, adequate, and reasonable, and should be granted preliminary approval.

### D.    The Method of Distributing Relief Will Be Equitable and Effective

As explained above, Class Members are eligible for two forms of cash relief: Documented Loss Claims, Inconvenience Claims, or both.  For Documented Loss Claims, Settlement Class Members are eligible to receive up to $5,000 if they: a) attest that they suffered an out-of-pocket loss as a result of identity theft or fraudulent activity experienced after October 1, 2020, and b) provide additional documentation to verify their damages. (SA, ¶¶ 4.5(b)(ii)(1)). The claims may be subject to proration, if necessary. The task of validating those claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases.  (Simmons Decl., ¶¶ 2–9 & Ex.  1).

Settlement Class Members may also submit an Inconvenience Claim by returning a claim form, but no additional documentation is required.  (SA,  ¶  4.5(b)(ii)(2)). Inconvenience Claims will be paid as equal shares of all funds remaining in the settlement fund after deduction of attorneys' fees/expenses, service awards, administration/notice costs, and payment of valid Documented Loss Claims. (*Id.*).

Thus, the only difference in treatment among Class Members is that those who incurred and submit Documented Loss Claims will—appropriately and equitably—receive payments in proportion to the amount of their out-of-pocket losses, which must be supported with documentation. All Class Members who submit valid Inconvenience Claims will receive a pro-rata payment. The 180-day claim period will be sufficiently long to enable all eligible Class Members to collect any necessary information before submitting their claims. For these reasons, the plan of distribution is both equitable and effective.

### E.    The Proposed Attorneys' Fees Are Reasonable

Class Counsel will request no more than 30% of the Settlement Fund as attorneys' fees, and that request will be subject to Court approval. This request is well within the typical range in the Tenth Circuit and elsewhere, and poses no impediment to preliminary approval. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (finding that attorneys fees equal to one-fourth to one-third of a settlement are "well within the range of reasonable and permissible fees and costs awards in class action litigation."); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991) ("The majority of common fund fee awards fall between 20% and 30% of the fund"); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009–2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in 450 studied settlements was 29%).

Class Counsel's application for a fee award will also demonstrate that the request is supported by the lodestar crosscheck, as counsel devoted substantial time to this matter, and will not be earning a large multiplier.

**F.      All Additional Factors Support Preliminary Approval**

Additional factors identified by the Tenth Circuit for use in weighing preliminary

approval include: whether serious questions of law and fact exist, placing the ultimate

outcome of the litigation in doubt; whether the value of an immediate recovery outweighs

the mere possibility of future relief after protracted and expensive litigation; and the

judgment of the parties that the settlement is fair and reasonable. *In re Motor Fuel*, 872

F.3d at 1116–17.  All of these factors support preliminary approval.

First, serious questions of law and fact exist. Although Plaintiffs are confident in

the strength of their case, data breach litigation is still a developing area of the law, and

few, if any, such cases have advanced all the way to trial. Numerous courts have noted

that legal and factual uncertainty in this field supports approval of data breach class

settlements. *Equifax*, 2020 WL 256132, at *7 (identifying disputed legal issues including

duty, causation, class certification, and additional risks related to discovery, juries, and

appeals); *Sonic*, 2019 WL 3773737, at *6 ("[t]he realm of data breach litigation is

complex and largely undeveloped. It would present the parties and the Court with novel

questions of law."); *Anthem*, 327 F.R.D. at 317–18.

Second, the value of immediate recovery here strongly outweighs the possibility of

relief after extensive litigation. Based on Class Counsel's review of ABS's financial

statements and insurance policies, Class Counsel is of the opinion that Defendant could

not sustain an extensive litigation effort and also preserve sufficient financial resources to

pay a judgment similar in size to the settlement benefits negotiated here. (Jt. Decl. ¶ 4). In

these circumstances, an early settlement that provides $1.7 million in total benefits to the

Class significantly outweighs the potential upside of continued litigation, which would deplete the funds available to pay any judgment, possibly to the point of a *de minimis* recovery for the Class.

For these reasons, and based on their experience in similar class litigation, Class Counsel is of the opinion that the settlement is fair, adequate, and reasonable, and should be approved. (Jt. Decl. ¶¶ 9, 12, 15).

## II. The Court Should Find It Is Likely to Certify the Settlement Class

When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g.*, Manual for Complex Litigation § 21.632 (4th ed. 2014); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Rule 23(e) states that before authorizing notice, a Court should determine that it "will likely be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See, e.g.*, *Harris*, 2019 WL 5846917 at *2. The Court should find that it is likely to be able to certify this Settlement Class. Courts have recently certified similar classes in data breach cases for purposes of final settlement approval. *See Equifax*, 2020 WL 256132, at *11–14, *aff'd in relevant part*, 2021 WL 2250845, at *16–19; *Anthem*, 327 F.R.D. at 307–16; *Sonic*, 2019 WL 3773737, at *2–3.

### A. The Rule 23(a) Requirements Are Satisfied

***Numerosity:*** Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable." In the Tenth Circuit, there is "no set formula" for determining whether numerosity is met, but district courts have "wide

latitude in making this determination." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citations and quotation marks omitted). Here, the proposed class consists of approximately 554,000 individuals distributed across all 50 states, Washington, D.C., and several territories. (Jt. Decl., ¶ 7). Joinder of this many individual plaintiffs is plainly impracticable, and the numerosity requirement is therefore met here. *See, e.g.*, *In re Thornburg Mortg., Inc. Secs. Litig.*, 912 F. Supp. 2d 1178, 1233–34 (D. N.M. 2012) (finding that class size in the "thousands" demonstrated that joinder was impracticable, and listing cases in support).

**Commonality:** Rule 23(a)(2) requires "questions of law or fact common to the class." The proponents of certification must identify a common contention "'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

In this case, all members of the proposed class assert that their personal identifiable information was compromised as a result of the Data Security Incident, and they bring the same primary claims of negligence, negligence per se, unjust enrichment, and Oklahoma statutory causes of action. Proving their claims thus will involve numerous common questions of law and fact that will be resolved in the same way for all class members, such as whether ABS owed Plaintiffs and Class Members a duty to handle PII with reasonable care, and whether ABS's data security practices were inadequate to the point of breaching that duty. *See, e.g.*, *Naylor Farms*, 923 F.3d at 789 n. 10 (explaining that whether a

defendant breached a duty allegedly owed to all class members is a common question). The commonality requirement thus is met.

*Typicality*: Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The interests and claims of named plaintiffs and class members "need not be identical," provided they are "based on the same legal or remedial theory." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010). The typicality requirement is satisfied where the interests of named plaintiffs and class members are not significantly antagonistic to one another, and where the harm or risk of harm faced by the named plaintiffs and class members stem from the same alleged conduct on the part of the defendant. *See id.* at 1199.

Here, the claims of Plaintiffs and Class Members are the same and there are no significant differences among them. Plaintiffs and all Class Members allege their PII was exposed in the same Data Security Incident due to ABS's deficient data security practices. Typicality is satisfied.

*Adequacy of Representation*: Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In assessing the adequacy requirement, courts look to answer two questions: (1) do the named plaintiffs and their counsel have any conflicts of interests with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citations and quotation marks omitted). Plaintiffs do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced. (Jt.

Decl., ¶¶ 11–13).    Further, as stated above, Plaintiffs and their counsel have been vigorously representing Class Members, and their diligence resulted in an early settlement that will deliver meaningful relief to Class Members within a year of the Data Security Incident. The adequacy requirement is thus met.

### B.    The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Manageability, the part of the superiority analysis that asks whether the case, if tried as a class action, would be manageable, is irrelevant for purposes of certifying a settlement class. *Amchem*, 521 U.S. at 620.

***Predominance:*** "[T]he predominance inquiry 'asks whether the common, aggregation-enabling[] issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Naylor Farms*, 923 F.3d at 789 (quoting *CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (quoting *Newberg on Class Actions* § 4:49)). "Critically, so long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms*, 923 F.3d at 789 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016)).

The requirement is met here for purposes of settlement because the overwhelming majority of the issues of law and fact are common to all class members. "The focus on a defendant's security measures in a data breach class action 'is the precise type of

predominant question that makes class-wide adjudication worthwhile.'" *Equifax*, 2020 WL 256132 at *13 (quoting *Anthem*, 327 F.R.D. at 312). As the *Anthem* court explained, predominance is satisfied where claims "rise or fall" on whether the defendant used reasonable data security practices, and where that question can be resolved using the same evidence for all class members because the information was stored on and breached through the defendant's same system. *Anthem*, 327 F.R.D. at 312. The only potentially individualized issue here is damages, which does not defeat predominance. *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'").

**Superiority:** The superiority inquiry requires courts to consider class members' interest in individually controlling the litigation, the extent and nature of any litigation already begun by class members, and the desirability or undesirability of concentrating the litigation in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)–(C). All of these factors weigh in favor of finding the superiority requirement is met here. For most of the 554,000 class members, individual damages are likely to be too small to warrant individual litigation, particularly because data breach litigation involves complex technical issues and expert testimony that make litigation costly. *See Anthem*, 327 F.R.D. at 315–16. Other than the three actions that will be terminated as a result of this settlement (two here and one in the Western District of Pennsylvania), Class Counsel is not aware of any other litigation initiated by class members as a result of the Data Security Incident. (Jt. Decl. ¶ 16). Finally,

concentration of the claims in this forum is appropriate, as it is where ABS is headquartered.

"It is enough that class treatment is superior because will 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *CGC Holding*, 773 F.3d at 1096 (quoting *Amchem*, 521 U.S. at 615). Litigating the claims of hundreds of thousands of class members—which would require presentation of the same evidence and expert opinions many times over—would be manifestly inefficient here.   Because class treatment is superior to individual litigation, superiority is satisfied.

## III.    The Court Should Approve the Proposed Notice Plan and Administrator

Rule 23(e)(1)(B) provides that if the parties' showing is sufficient to enable the Court to determine that it will likely be able to approve the proposal and certify the settlement class, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) requires that for any proposed settlement under Rule 23(b)(3), notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The permissible means of notice include "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Due process likewise requires that class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) ("[t]he legal standards for

satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar.").

The method and manner of notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975). There is no single way in which the notice must be transmitted, but individual notice by mail is sufficient, and other approaches, including electronic notice, are permissible. 7B C. Wright & A. Miller, *Federal Practice and Procedure* § 1797.6 (3rd ed. April 2021 Update).

The Parties, therefore, propose to notify Class Members individually by electronic mail, if available, and U.S. mail to class members for whom valid email addresses cannot be found by the Administrator. ABS possesses data showing the identity and addresses of virtually all individual Class Members. (Jt. Decl., ¶ 7). The Administrator will use this data to locate email addresses for as many Class Members as possible and send notice to those addresses, and the Administrator will send notice via U.S. mail to Class Members for whom a valid email address is not located. (Simmons Decl. ¶¶ 12, 16–18).

Reasonable efforts will be made to re-mail notices to Class Members whose initial notice was returned as undeliverable. All forms of the notice are written in plain English and include a description of the litigation, the claims being made, and the terms of the settlement as well as information for Class Members about the deadlines and their rights to opt out or object. In addition, the Settlement Administrator will establish a website where Class Members will be able to view and download copies of the notices, claim form,

pleadings, orders, and other documents relating to the settlement.  Class members will be able to call a toll-free number for further information.

This notice program satisfies the requirements of due process and Rule 23 and thus should be approved.  The Court should also approve Analytics Consulting to serve as the settlement administrator. Analytics is a well-known firm with a history of successfully administering many class action settlements, including other data breach settlements. (Simmons Decl., Ex. 1).  The parties selected Analytics after considering bids from multiple administration firms and believe that Analytics will be able to meet the obligations imposed on the settlement administrator under the settlement for a reasonable cost. (Jt. Decl. ¶ 10).

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court grant their motion and enter the order proposed by the parties to: (1) preliminarily approve the proposed settlement; (2) certify the proposed settlement class; (3) approve the notice program and Settlement Administrator; and (4) schedule a final approval hearing.

Dated: July 1, 2021                              Respectfully submitted,

*/s/ Gary F.  Lynch    (filer)*               */s/ Joseph P.  Guglielmo (w/consent)*
Gary F.  Lynch                                  Joseph P.  Guglielmo
Jamisen A. Etzel                                **SCOTT+SCOTT ATTORNEYS AT**
**CARLSON LYNCH, LLP**                   **LAW LLP**
1133 Penn Avenue, 5th Floor               230 Park Avenue, 17th Floor
Pittsburgh, Pennsylvania 15222            New York, New York 10169
Tel.  412.322.9243                             Tel.  212.223.6444
glynch@carlsonlynch.com                   jguglielmo@scott-scott.com
jetzel@carlsonlynch.com

27

**FEDERMAN & SHERWOOD**
William B. Federman, OBA #2853
Molly E. Brantley, OBA #33126
Tyler J. Bean, OBA #33834
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
meb@federmanlaw.com
tjb@federmanlaw.com

**WOOD LAW FIRM, LLC**
E. Kirk Wood
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: 205-908-4906
Facsimile:  866-747-3905
ekirkwood1@bellsouth.net

**GREG DAVIS LAW FIRM, LLC**
Greg L. Davis
7031 Halcyon Park Drive
Montgomery, AL 36117
Telephone: 334-832-9080
Facsimile: 334-409-7001

***Counsel for Plaintiffs***